18-8012. Counsel, would you make your appearance, please? Thank you, Your Honor. May it please the Court, Counsel, my name is Mike Wilkerson. I'm here as the attorney for the appellant. The appellant in this case is a lady by the name of Michelle Sorenson. Michelle Sorenson was an employee of the Campbell County School District for effectively her whole working career. She started before she was 25 years old until her termination when she was 44 years old after approximately 20 years working for the school district. Michelle Sorenson spent her preliminary and elementary school education all but her very first grade year was in South Dakota in the Campbell County School District principally in special ed classes. She was an artistic lady, but she had, it was found as the years went by, she had a very unique ability. She had savant characteristics and she had the ability to do what we would call a photographic memory. She could look at a page, look at a list of names, numbers, information, and it was found very quickly, though she started as a very low-level staff member for the school district, very quickly it was found that because of her ability with memory, with numbers, with organization of them, though she struggled with autism as far as socially and how to cognitively deal with a lot of things, it was found that she had incredible ability on the computers and so very quickly in her career and as the years went by she was promoted to and made a computer systems analyst as they called her, became a salaried employee, became an important employee with the school district dealing with complex programs to track the hundreds and hundreds of students to set up school year programs, classes, without any, quite frankly, without a college degree, without initially any formal training, she became this computer analyst for the school district. Sadly, in 1999, 19 years ago, along with everything else that she had to deal with in life, she was diagnosed with having MS. She was diagnosed with that, that didn't affect her very much initially, and she kept right on working for the school district with, as her MS progressed and developed and created more and more issues and difficulties for her, to where ultimately she got to where in more recent years, as this this case evolved, in, as this, as the cases here on summary judgment from the district court in the judge's order, listed in that order some of the things she suffers from, this was progressive, suffers from now, are headaches, double vision, fatigue, body aches, difficulty concentrating, memory loss, difficulty writing, tremors, loss of balance, tingling, falling, difficulty with with blind motor coordination, weakness, shortness of movement, and there's actually others. All of these are very common to people disabled with MS. The disease is a progressive disease. Could I interrupt for a minute? Yes. It seems to me from your briefing, if I'm understanding correctly, you're relying on, it appears solely on information that was not considered by the district court, because Ms. Sorensen was pro se at summary judgment stage, and she sought to introduce all of this evidence, admissible and otherwise, in a surreply, and the district court refused to consider it, and it appears to me that you're relying on that evidence now to say that summary judgment should not have been entered. Because there is a great deal of information that was not before the district court. We would submit that if one got specific with those circumstances, and I've just been involved in this case in recent months, the story of this case is there were two other attorneys involved in it. Well, it's very important for us to know, this is a summary judgment case, we need to know what did the district court consider, and if you're asking us to consider information that the district court did not consider, I don't understand how we can get there, and that seems to be the case from what I can see. Well, that's only part of it, Your Honor, but we would make the argument that the disk that had all of this school information, from emails to the information on it, were submitted pro se, this person, because the fact that these disks, and I find the conversations about the disks very confusing in the briefs, but the fact is, apparently she submitted some disks, but that doesn't make any difference in terms of what I'm asking is, it appears the district court didn't rely on any information in those disks, and if you're contending the district court did rely on information in those disks, I'd like for you to point me to where that happened. Your Honor, we're not contending that the district court relied on that. The district court did reference them. The district court should have, in this case, I feel, should have let this lady in her reply know that what she needed to do to establish the record, but I would submit, I would submit, Your Honor, that in the appendix, which of itself has affidavits and letters of principals and of even the assistant superintendent, in the record that was before the district court, there are hundreds of pages. There are additional hundreds and hundreds in that supplemental appendix, but there are hundreds of pages of information. There is, in the appendix, in the record before the district court, and I acknowledge that's a real issue here, I think it was created in large part because of what the district court allowed of these other attorneys and what they required of this lady in answering pro se, even when she approached the district court and said, after many, many tries, I found an attorney in Colorado that'll take this and do this, but he needs some months to bring himself up to speed, and all they gave was weeks. They gave just 28 days, ultimately, from when that attorney was found to respond, and it was impossible to accomplish that, but we would submit, Your Honor, that there is, and I would even here, in the order of the district court judge, would read in the footnotes, speaking of Larry Steiger, who is a principal, and this affidavit is part of the record of the district court, the district court judge had before them, says Larry Steiger described a position at the high school which would utilize the data analysis skills and would be helpful to the high school because of their problems with their master scheduling. This is something that Mrs. Sorenson did. She did it for all the schools. She prepared their master schedules. She dealt with the very complex and sophisticated programs every year for years on end. Could I clarify, just following up on Judge Moritz's line of questions, is it your position that even if we were to disregard the supplemental appendix and you can submit a disk, but if you don't identify things in the disk, it's as good as not submitting the disk, and so assuming that we are only relying on the things that were identified to the district court and before the district court, is it your view that you still have an actionable claim? Absolutely, Your Honor. On summary judgment, obviously, and there are an incredible number of cases that have dealt with, what's the standard of use for summary judgment? There are no material issues of fact. The moving party has a right to the judgment as a matter of law, but another key part of that is established by the U.S. Supreme Court in the principal case in 1986. I bet you'd be sure I'd have to look to get the exact name of that, but versus Zenith, where they said also the facts and the evidence need to be considered most favorably towards the non-moving party. Judge Johnson himself, in his record, speaks of, and these alone ought to be enough, of the affidavits and the letters written by the assistant superintendent, by multiple principals, where every one of them basically said that these, and this issue is principally five years, the last five years of Mrs. Sorenson's work, where the school, because of her asking for accommodations, because of the difficulties as the disease progressed, she asked for various accommodations, not because she knew the ADA particularly, but because she assumed these were things she needed to do her work, that ultimately Larry Steiger, a She worked at the administrative office for years. She can have her own office. It can be quiet. She can do this work. That's what he's referring to. Larry Steiger, in his own affidavit, said that she never worked as a secretary or as a clerk. Well, did she get the accommodations she asked for? She was moved to that. Yes, she was moved to that office. There's no question there were certain accommodations given. Let me ask you. There were some that weren't. Is the theory that you're pursuing one of disparate treatment, in other words, they discriminated against her because of her disability? Absolutely. Okay. So it's not a question of they didn't give her an accommodation. It's a question of they treated her less favorably because she was a disabled person. Absolutely. Part of the record and that's even brought up by Judge Allen is one thing she asked for because she was experienced that there be training to staff around her on how to deal with a person with disability. Well, then the question I'm asking is where in the record is there evidence of any sort of animus towards Ms. Sorensen related to her disability? In other words, I assume you'd accept a person to take adverse actions against an employee without having those actions be animated by some discriminatory intent against that employee. Well, what happened here, Your Honor, and the argument of the appellant here is when it was determined by the school to accommodate her by moving her to this paid dramatically, and from that time forward for the next five years, though, throw the supplemental appendix out, use all that's in the basic appendix, all that's in the affidavits, all that's in the depositions that were before the district court, never waited favorably, actually, quite frankly, in the summary judgment hearing towards her. Those made it very clear that during that five-year period, she continued to work as a computer system analyst. There is, and even Larry Steiger says, and this is before the district court, that he asked that she be put back on her salary, back into her salary position, because she wasn't being paid properly for what she did. I guess what I'm trying to get at is, at a certain point, didn't she request to have some sort of change in salary, Your Honor? Never. She clearly makes it, in fact, the HR department, the head of HR said he never even talked to her as they moved her back there. She, what she understood... Well, let me reframe it a different way, then. She never stopped doing work as a computer systems analyst. Is there any reason, where in the record is there a basis to infer that her continued duties as a computer systems analyst were due to discriminatory intent against her because of her disability? We're not saying her duties. No, she could handle that job until she had progressed to a point she could no longer handle it. The discrimination was to call her a secretary when she wasn't a secretary. But why was that due to her disability? Well, they did this because she was disabled, because they had to But it was... Well, the move was an accommodation. I'm struggling with the nature of it. The move was an accommodation, but... And you're saying that you're not alleging anything with respect to a denial of accommodation. So, I mean, if you're alleging that she was doing one job, and being paid for one job, but doing another job, which I So, where is the evidence that they didn't pay her for the job she was doing because of her disability? That there was some animus? Well, because of her very disability, and I see my time's up, let me answer your question. Because of her disability, they made the move, but the school itself determined that they were going to make that move. They were going to change her title, though they never changed her work status, and they were going to change her pay. And that continued for five years, even to the point of having her work at home for half of the time, and she actually worked more than half days at home for her last several years, on school computers that they put there because of the work she did as a computer systems analyst, and claimed she was only a part-time employee, and all of this was a result of because of her disability, because of her inability to, if this hadn't happened, if MS would have never come up, she would have kept working right where she was, doing exactly what they wanted. It was because of her disability they began to work. If it may please the court, counsel, my name is Tracy Copenhaver. I represent the Appalachia Campbell County School District Number One. I want to briefly touch on some of the questions you've asked today. First of all, there seems to have been forgotten that on the first day, the court denies any new motion to supplement the record without prejudice for a renewed compliance with the Federal Rules of Appellate Procedure, and that the motion must specifically state the grounds for the motion and the relief sought. They asked to supplement the record. It was denied. They were given an order that said it was without prejudice they could refile a motion. They never refiled the motion. As it sits today, the order is the supplemental record is denied, and they never refiled the motion. That's where we're at. Eight hundred and twenty-four pages of documents and supplemental index, many of which we've never seen, which we requested in discovery and they claimed they didn't have, which now suddenly appear in the supplemental record. The dis... I thought he was saying he got the supplemental record stuff from you in discovery. I think he did suggest that. It did not happen. Some of that stuff we've never seen. I cited in the record to her deposition where we asked for the stuff from her computer. She said, well, I had to erase it because I wanted to keep pictures of my daughter. She had a laptop as an accommodation. We gave her a laptop to work at home. When she turned it in, the whole thing had been erased. There wasn't one thing on that laptop. So she absolutely refused to provide us the information from it, but then suddenly she claims here is some. She apparently is representing to you that she gave dis to the district court. Your Honor, that didn't happen. There were no dis provided to the district court. There were no dis provided to me. The clerk of any dis... The confusion seems to be because the district court specifically referenced the dis in the summary judgment order. I agree, Your Honor. That is the... It appears to be a lifted it from her pleadings, but... That's exactly what happened. The reference was to the plaintiff in this case claims that she said that the information is on the dis. And that's what she claims. And the judge referred to that claim. The judge never saw any dis. Nobody did. They don't... Well, if they exist, we've never seen them. What was the point of the judge referring to it? It was a summary of the allegations in his order on summary judgment. The plaintiff claims X, Y, Z. It was just a summary of what she was claiming. And the basis of that, that's why it was in the order. It wasn't because there was anything in it that he relied upon. It was just she claimed she submitted information supported by these dis. And that was just a sentence out of the entire order. But that was the reason, Your Honor. So the appellee in this case basically tells you today that she was demoted and required to continue to perform computer systems analyst position. And he represented to you that she absolutely never represented that she asked for that. That simply is not true. Here's what you will find in the record. When her deposition was taken, she testified that she asked for that change in position. And she testified she did that because she could no longer do the job of a computer system analyst. She said, I'm the weak link in this office. I want to do something where I can contribute. That's testimony from her sworn deposition. They said, okay, you don't have to apply for it. We'll let you transfer. So they had a discussion. Her answer was, this is going to be a reduced salary. You know you're going to get paid with the district approved salary schedule. She testified money was no object. That wasn't why she did it. When she transferred, she was given a specific form that says your new position is guidance clerk. This is the hourly rate of pay. This is what you're going to get. She wrote on that form, thank you, and drew a happy face. She testified that about several months after that transfer, the happiest time of her life. This is not a woman that was in any way mistreated. What do we do with Larry Steiger's affidavit that suggests that even after the transfer, she in fact was doing the same job that she was doing before the transfer? Here's what you do with that, your honor. They were compassionate and sympathetic to her from the time she incurred this horrible disease. She came to three administrators and lied to them. She said, I'm applying for disability through Social Security and through the district's private carrier. I need you to sign this so I can get disability. Her attorney prepared it. He signed it. He shouldn't have. It's in the record. His sworn testimony is also in the record where he said, she lied to me. I tried to help her. I signed it. Do you really know what the jobs of the computer specialist analysts are? He said, I don't have any idea what those duties would be. Did she do the job of a guidance secretary? Yes, she did. She did what the guidance secretary before her did it. She did what the guidance secretary after her did it. But here's the key. Could that be a disputed issue of fact? If we were relying on his testimony, it could be. But we're not. We have the sworn testimony of Ms. Sorenson herself. I carefully went through the duties of a computer system analyst. The primary job of that position was to prepare massive state reports. There were over 15 locations throughout the district, over 17 locations. She generated these reports. These reports are all in the record. The documents are there. If you look at pages 62 through 66 of volume one and page 101 and 125 through 126 of volume one, we covered those duties. She didn't do them, not one of those, after the transfer. On pages 127 and 128, in order to do that job, she had to have system access, computer access to the programs to do that job. She testified, I didn't have any of that access. She couldn't have done that job if she'd wanted to. And she didn't want to, which is why she asked for the transfer. Well, we have her deposition testimony that you're alluding to. There's still an affidavit in the record which says something to the contrary. And I mean, you say you're not relying on it. Well, they may be relying on it to generate a dispute of fact. And so it would seem to me that I'm not sure why, as a matter of law, we can just say, oh, well, you know, he didn't read it. I mean, that's not the way this generally works. I mean, you sign something under oath, you're held responsible for it. And so we have that, and we have her deposition testimony. We got a conundrum, you know? And so why isn't that a conundrum that juries generally resolve? Because it's the plaintiff's own sworn testimony as to what happened. It's undisputed that the plaintiff herself has given sworn testimony that she could not possibly have done that job. It is undisputed. She testified to that. Let me ask a different question. What is, as far as your understanding of the record, what basis is there to believe that any of these adverse actions that occurred were predicated on any sort of discriminatory animus against her because she was disabled? Your Honor, at our position, there isn't a single thing in the record of any admissible evidence in any of the record that is admissible that would support that conclusion. None. So, and more specifically, let's assume, given all benefit to the appellant, that there was a genuine issue of fact as it relates to her continuing to do the duties, she would still need to establish that the reason that that occurred was because of discriminatory animus, right? Absolutely. And it's your position there is no evidence to that effect? It's our position. It's what the district court found. It's what the record shows. There were over 12 different accommodations during this period of time that we gave her, from providing futons for her lay down on and rest if she was tired. One of the biggest ones was letting her work from home. They didn't let anybody else work from home. Ms. Sorensen, if you're tired, if you're hot, if you're uncomfortable, if you hurt, you can go home. You can work from home. Just turn in your time. But work from home. We'll give you a laptop. They bought her a laptop. Will her husband ask if she could work part time? They met with her. She testified it was a mutual agreement. She testified that she actually asked him to start that halftime position earlier. They said, OK. She wanted a new office because it was stressful because there was a lot of people in the guidance office. They gave her that. I'm just interrupting you. I'm just out of curiosity. It seems to me, based on her EEOC complaint and the descriptions of what her complaint now is, it seems that these were not timely claims. Did you ever allege timeliness? I mean, it looks like she made the complaint about the demotion four years after the demotion occurred. And it looks to me like these were continuing. She's alleging that she wasn't paid for a period of years what she should have been paid. I don't see an allegation. I'm just asking out of curiosity. Some of that. You're 100 percent correct. It is way late. Some of this didn't even come up until she filed a response to our motion for summary judgment. For example, she made an allusion to I'd like to work a nine to 11 month contract. There's nothing in the record. My point is, as to the allegations she did make, that appears she made in her complaint. Did you ever allege that her complaint was untimely for her EEOC filing? Not that has been made within one hundred and eighty days of the event. I believe the EEOC filing discriminatory was within one hundred and eighty days of the date of her right. But her actions, her what she's complaining of, go back several years. Correct. I don't believe that was raised, Your Honor. The EEOC ruled, and I guess I didn't handle the EEOC part of this, that they believe that. Well, it's a defense you would have raised in this action. It was not. Except for the new claims, we did raise that, that just to the judge, it wasn't filed as a separate basis. But it was pointed out that the transfer from the computer systems analyst to the guidance secretary position was in 2008. And I mean, she started bringing that up and that was, you know, five years previous. She testified every accommodation she asked for, she was given. She testified that there was no accommodation that would have allowed her to do her job. She gave doctor's records and her own FMLA statements. And she couldn't even apply for long term disability without proving she couldn't work. So when they changed, so she asked for a meeting in February of 2013 because she could no longer work. That's the testimony. I could no longer work. I asked for this meeting. At the meeting, once again, the reaction of the administration, OK, you know what? We'll take away the scheduling duties. We can find somebody else to do it. She was making huge mistakes at this point. Anyway, she acknowledges that. You won't have access to that. They didn't take away access to any of the other computer programs. They invited her to come back and work. They invited her to train her replacement. She testified, well, how can you come back when you're throwing up and sick? A great point. And at a certain point, she couldn't come back if she was going to do her long term disability claim, right? Mutually exclusive. It's one or the other. You have to be unable to work, even apply for long term disability. She testified she got every benefit she was entitled to. There is in the record at page 62 through 66, I went through that guidance secretary position point by point, essential function by essential function. She testified that's what she did. So to say she wasn't doing that job is just clearly unsupported by the record. They've been over backwards a month before she told him she was done. She wrote a letter, an email to her principal saying, thank you. You guys have been so good to me. If it weren't for how well you've taken care of me, my disease, I'd be in worse shape. And then she tells her doctor, when I met with them, I resigned. She tells him I'll never come back to work. Her doctors tell him she'll never be able to return to work. She applies for long term disability. They try calling her when all of her leaves exhausted. Submit your resignation. They can't get her to answer the phone. They can't get her to return phone calls. And they did finally take it as a resignation to the board because there was nothing left. She wasn't working. She wasn't coming to work and said she never would. Her husband then calls and says she didn't resign. And their response. Well, you gave us all this information. She'd never work again. If that's not true, OK, get us a release. Come back to work. But you can't pursue your long term disability. Your time's up. And they never heard from him. Thank you, counsel. He's over by a minute and thirty one. Then case is submitted. Thank you, counsel. Thank you.